## STATE OF CONNECTICUT *v.* CHARLES F.[1]
### (AC 31821)

Gruendel, Beach and Alvord, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to use the defendant's full name or to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

Argued September 7—officially released October 18, 2011

*Carlos E. Candal,* special public defender, for the appellant (defendant).

*Sarah Hanna,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* former state's attorney, and *Terence D. Mariani,* senior assistant state's attorney, for the appellee (state).

*Opinion*

PER CURIAM. The defendant, Charles F., appeals from the judgment of conviction, rendered after a jury trial, of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (1), six counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), one count of risk of injury to a child in violation of General Statutes § 53-21 (a) (2) and two counts of assault in the third degree in violation of General Statutes § 53a-61 (a) (1). On appeal, the defendant claims that the court (1) violated his right to self-representation as guaranteed by the sixth amendment to the United States constitution, (2) improperly failed to give a limiting instruction to the jury with respect to uncharged misconduct evidence and (3) improperly admitted uncharged misconduct evidence when its probative value was outweighed by its prejudicial effect. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant owned an electronics repair business in Waterbury. Children often congregated there, and he permitted some of them to remain overnight if they had no other place to stay. The incidents leading to the charged offenses took place at various times in 2006 and involved three minor males, C, J and K. K is the defendant's son.

During the trial in July, 2009, several exhibits were admitted into evidence without objection by the defendant, including two photographic images from his computer showing the defendant sexually assaulting one of the victims. The jury found the defendant not guilty of one count of kidnapping in the first degree, but found

him guilty of all of the remaining charges. The court accepted the verdict, but thereafter granted the defendant's motion for a judgment of acquittal as to a second count of kidnapping in the first degree. The defendant was sentenced to a total effective term of fifty-five years imprisonment, execution suspended after forty years, with fifteen years probation. This appeal followed.

I

The defendant first claims that the court deprived him of his constitutional right to self-representation. He argues that he clearly and unequivocally stated to the court that he wanted to represent himself at the conclusion of the state's case-in-chief. The defendant claims he was constructively denied his right to self-representation because the court, although indicating it would consider his request, placed severe time limitations on his locating and presenting witnesses to testify at trial. The following additional facts are relevant to the defendant's claim.

The defendant and his trial counsel had several disagreements throughout the course of the pretrial and trial proceedings.[2] On July 15, 2009, after his counsel's cross-examination of a state's witness, the defendant addressed the court outside of the presence of the jury and expressed his dissatisfaction with his counsel's performance. The defendant indicated that he had directed his counsel to ask certain questions and to call various witnesses in his defense, but that his counsel refused to do so. He told the court that he was "firing him" and that he wanted to represent himself. The court indicated that it would adjourn court for the day and that the defendant would have the weekend to consider whether he, in fact, wanted to finish the trial representing himself.

---

[2] The defendant, prior to trial, previously had been represented by two other public defenders.

On July 20, 2009, the defendant repeated his request to represent himself and named several individuals he wanted to call as witnesses on his behalf. After considerable discussion with the court, the defendant limited his list to six witnesses. The court then explained that he would be responsible for questioning those witnesses, responding to the state's objections and participating in the charging conference. At that point the court canvassed the defendant in accordance with Practice Book § 44-3.

After the defendant had been canvassed, the court told the defendant that it was concerned about losing members of the jury because the trial had taken longer than anticipated. The court stated that the defendant would have that afternoon and the next day to procure his witnesses. Most of the witnesses already were available, and defense counsel indicated that he would subpoena the remaining two witnesses for the defendant. The defendant said that he understood, and he did not request that the court allow him additional time to procure his witnesses. The court then inquired: "[S]ince this is such a momentous decision, I want to make sure, one last time, is this what you want to do; do you want to represent yourself for the remainder of this trial?" The defendant responded: "I—no, I just want it on the record I—I—I don't want him, but, you know, I just want it on the record that I believe in my heart he's ineffective and he's not doing his job the way I want him to do it. . . . [B]ut, you know, I'll stay with him, but I'm just letting you know I'm not—I'm not satisfied."

The defendant's claim that the court constructively denied his right to self-representation is belied by the transcript of the proceedings. The defendant never indicated that he could not proceed because he did not have sufficient time to prepare or to procure his witnesses. Furthermore, although initially his request to represent

himself was clear and unequivocal; see *State* v. *Flanagan*, 293 Conn. 406, 427, 978 A.2d 64 (2009); the defendant changed his mind after being advised of the dangers and disadvantages of self-representation[3] and abandoned his initial request. The defendant expressly stated that he wanted his trial counsel to continue to represent him. Accordingly, this claim is without merit.

## II

The defendant's next claim is that the court improperly failed to give a requested limiting instruction with respect to certain uncharged misconduct evidence.[4] He argues that because there were twelve counts and three victims, the jury should have been told that the two photographic images from the defendant's computer could be considered only for limited purposes and not as "misconduct evidence to infer a propensity for inappropriate sexual contact with minors . . . ."

The defendant's claim fails for two reasons. First, the evidence was not uncharged misconduct evidence, but rather was submitted as direct evidence to prove a charged offense. The evidence demonstrated that C was shown the photographic images of the defendant sexually assaulting J, which served as the basis for the state's charge of risk of injury to a child as to C.[5] Second,

---

[3] Section 44-3 (4) of the Practice Book requires that the court make the defendant aware of the dangers and disadvantages of self-representation.

[4] "Uncharged misconduct evidence relates to a collateral, uncharged crime and does not prove the commission of the principal crime with which the defendant is charged." (Internal quotation marks omitted.) *State* v. *Aaron L.*, 79 Conn. App. 397, 409, 830 A.2d 776 (2003), aff'd, 272 Conn. 798, 865 A.2d 1135 (2005).

[5] It appears from our review of the transcript that the defendant, although characterizing his concern as one pertaining to uncharged misconduct, actually was concerned that the jury would co-mingle the evidence and fail to weigh it separately as to each charge and each victim. The court's jury instructions, however, were comprehensive and instructed the jury on each count of the information. Further, the court specified the evidence related to each count.

although the court refused to give the limiting instruction requested by the defendant during the trial, the court stated that the defendant could request an appropriate charge to be given to the jury in its final instructions at the conclusion of the case. Subsequently, during the charging conference, defense counsel indicated that he agreed that there was no uncharged misconduct evidence, that he had not requested a charge on uncharged misconduct in his written requests to charge and that he was not asking for such an instruction. Accordingly, the defendant waived his request for a limiting instruction on uncharged misconduct. See *State v. Lynch*, 123 Conn. App. 479, 490–91, 1 A.3d 1254 (2010).

## III

The defendant's final claim is that the court improperly admitted uncharged misconduct evidence, specifically the two photographic images from the defendant's computer, because that evidence was more prejudicial than probative. As previously discussed, the challenged evidence was not uncharged misconduct evidence but rather was used as direct proof as to a charged offense. Moreover, and significantly, the defendant failed to object to that evidence when it was offered by the state. Because he failed to do so, this evidentiary claim was not properly preserved for appellate review. See *State v. Cabral*, 275 Conn. 514, 530–31, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005).

The judgment is affirmed.